IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JOHN RUSSELL | § | |
| | § | |
| V. | § | CIVIL NO. 4:24-CV-1114-P |
| | § | |
| AMANDA RICH, ET AL. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, TO COMPEL ARBITRATION AND DISMISS OR STAY LAWSUIT PENDING ARBITRATION**

Pending before the Court is Defendants Amanda Rich ("Rich")[1] and Richemont North America, Inc. ("RNA")'s Motion to Dismiss, or Alternatively, to Compel Arbitration and Dismiss or Stay Lawsuit Pending Arbitration ("Motion to Dismiss") [doc. 31], filed March 21, 2025. Having carefully considered the motion, response, and reply, the Court **RECOMMENDS** that Defendants' Motion to Dismiss be **DENIED** and Defendants' Alternative Motion to Compel Arbitration and Stay the Lawsuit Pending Arbitration be **GRANTED** and the case be **STAYED** pending arbitration.

## I.     RELEVANT BACKGROUND

Plaintiff "served as Manager, Anti-Fraud at [RNA] from February 2012 to March 2015, and Senior Manager, Anti-Fraud from April 2015 to March 2023." (Pl.'s Am. Compl. at 1.) On November 24, 2021, while employed with RNA, Russell allegedly signed a "Dispute Resolution Agreement" that contains an arbitration clause. Such agreement, as relevant here, states:[2]

---

[1] According to Plaintiff, "Defendant Amanda Rich[, who was once a co-worker of Plaintiff,] served as a Senior Manager, Ecommerce & Innovation at Richemont North America . . . from April 2022 to June 2023." (Plaintiff's Amended Complaint ("Pl.'s Am. Compl.") [doc. 26] at 1; *see* Pl.'s Am. Compl. at 4.)

[2] The Court notes that the court may consider as part of the pleadings"' [d]ocuments that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). The Court finds and concludes that the Dispute Resolution Agreement was referred to in Plaintiff's Amended Complaint and is central to his claims. (*See*, *e.g.*, Pl.'s Am. Compl. at 29-30.)

1. [RNA] and I agree to utilize binding individual arbitration to resolve all disputes that might arise out of or be related in any way to my employment by RNA. Such disputes include, but are not limited to, claims I might bring against RNA for wrongful termination, discrimination, harassment, retaliation, breach of contract, wage and hour violations, and torts such as invasion of privacy, assault and battery, or defamation. . . .   RNA and I specifically waive our respective rights to bring such claims against the other in a court of law and to have a trial by jury.

2. The only exceptions to binding arbitration shall be for claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under state worker's compensation laws, claims for unemployment insurance benefits, claims for wages limited to the extent such are brought before the state Labor Commissioner or similar governmental agency, claims seeking an injunction such as claims to enforce confidentiality, non-solicitation and non-compete agreements, or other claims that are not subject to arbitration as proscribed under state or federal law.

3. My agreement to arbitrate claims against RNA includes claims I might bring against RNA's parent, subsidiary, affiliated or client entities or Maisons as well as against owners, directors, officers, managers, employees, agents, contractors, . . . or client entities.

4. . . . .  Any dispute regarding the validity, scope or enforceability of this agreement, or concerning the arbitrability of a particular claim, shall be resolved by a court, not by the arbitrator. . . .

   . . . .

6. Any arbitration proceeding under this agreement shall proceed under and be governed by the Federal Arbitration Act ("FAA") because RNA is engaged in interstate commerce. . . .

   . . . .

   . . . . I FURTHER UNDERSTAND THAT THIS AGREEMENT REQUIRES RNA AND ME TO ARBITRATE ANY AND ALL DISPUTES THAT ARISE OUT OF MY EMPLOYMENT . . . .

(Defendants' Motion to Dismiss ("Defs.' Mot."), Monica Villaquiran Declaration [doc. 31-2] ("Villaquiran Decl.") at Exhibit ("Ex.") A,[3] pp. 9-11.)[4]

Plaintiff alleges that, on March 31, 2023, he "was forced to resign under severe duress and distress, leading him to contemplate suicide." (Pl.'s Am. Compl. at 7; *see also* Pl.'s Am. Compl. at 13-14.) Plaintiff claims that, "[s]ubsequently, after consulting with the Equal Employment Opportunity [Commission] ("EEOC") and Department of Labor ("DOL"), the Plaintiff rescinded his resignation, recognizing the need for a careful approach from both parties." (Pl.'s Am. Compl. at 7.) Plaintiff alleges that RNA immediately rejected such recission, "leading to yet another series of deliberate adverse employment actions." (Pl.'s Am. Compl. at 8.) Plaintiff claims that, thereafter, on May 3, 2023, at 8:49 p.m., Plaintiff signed a document titled "Agreement and General Release" ("General Release") "after Donna Dean and Scott Barefoot both confirmed that [Plaintiff's] sensitive personal confidential data from the PayPal accounts had been deleted and his access to RNA's PayPal accounts containing sensitive customer's confidential data had been revoked." (Pl.'s Am. Compl. at 19; *see* Pl.'s Am. Compl. at Ex. A, p. 6.)

The General Release, contains, as relevant here, the following language:[5]

> 2.  **Consideration**. In consideration for Employee timely signing and not timely revoking this Agreement and General Release (the "Agreement"), and Employee's compliance with the terms set forth herein, Richemont agrees:

---

[3] The Court notes that the page numbering of Exhibit A that is attached to Villaquiran's Declaration is confusing. For purposes of citation in this order, the Court has numbered the pages of Exhibit A in chronological order with p. 4 of doc. 31-2 being p. 1 of Ex. A, p 5 of doc. 31-2 being p. 2 of Ex. A and so on.

[4] Plaintiff, in his Amended Complaint and Response to Defendants' Motion to Dismiss cites "multiple reasons that challenge the enforceability and applicability of the arbitration agreement." (Pl.'s Am. Compl. at 29; *see* Plaintiff's Response to Defendants' Motion to Dismiss ("Pl.'s Resp.") [doc. 37] at 11-20.) The Court will address such challenges *infra*.

[5] As set forth above, the court may consider as part of the pleadings "'[d]ocuments that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Collins*, 224 F.3d at 498-99 (quoting *Venture Assocs. Corp.*, 987 F.2d at 431). The Court finds and concludes that the General Release was referred to in Plaintiff's Amended Complaint and is central to his claims. (*See, e.g.*, Pl.'s Am. Compl. at 14-29.)

    a. to pay Employee [redacted], less lawful deductions and withholdings, within fifteen (15) business days after the Effective Date of this Agreement (as defined below):

    . . . .

    c. . . . .

  Employee consents to the payments described in this Paragraph 2 to be paid by direct deposit to the same bank account used during Employee's employment with Richemont and pursuant to Richemont's standard payroll practices. . . .

    . . . .

4. **<u>General Release of Claims</u>**.

    a. In consideration for the payments and benefits provided in Paragraph 2 of this Agreement, Employee knowingly and voluntarily releases and forever discharges, to the fullest extent permitted by law, Richemont, its parent corporation, affiliates, subsidiaries, divisions, insurers, brands, related entities, successors and assigns, and their current and former employees, officers, directors, and agents thereof, individually and in their corporate capacities, and their employee benefit plans, programs and arrangements, and their administrators, functionaries and fiduciaries (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all claims, demands, causes of action, fees and liabilities of any kind whatsoever, whether known or unknown, asserted or unasserted, which Employee ever had, now has, or may have against any of the Releasees by reason of any act, omission, transaction, practice, plan, policy, procedure, conduct, occurrence, or other matter based upon or arising from any fact or set of facts, whether known or unknown to Employee, up to and including the date on which Employee signs this Agreement, arising out of or relating in any way to Employee's employment relationship with the company or the Releasees or other associations with the Company or the Releasees or any termination thereof, including but now limited to, any claim under the following (all as amended):

- Title VII of the Civil Rights Act of 1964;

  . . . .

- The Americans with Disabilities Act;

  . . . .

- The Family and Medical Leave Act;

- The Texas Commission on Human Rights Act . . . ;

. . . .

- Any public policy, contract, tort, or common law;

. . . .

10. **Knowing and Voluntary Waiver of Rights**. Employee acknowledges and agrees that Employee is voluntarily and knowingly waiving rights and claims that Employee would have if Employee did not sign this Agreement. Specifically, Employee acknowledges and agrees as follows:

. . . .

g. Employee has a period of seven (7) days following Employee's execution of this Agreement in which to revoke the Agreement ("Revocation Period") by notifying in writing via hand delivery, or electronic mail, Donna Dean, 645 Fifth Avenue, New York, NY 10022; email: donna.dean@richemont.com;

h. Because of the Revocation Period, this Agreement will not become effective and enforceable until the eighth date after it is signed by Employee (the "Effective Date"), provided that Employee has delivered the signed Agreement to the Company and Employee did not revoke the Agreement, . . . .

(Defs.' Mot., Donna Dean Declaration ("Dean Decl.") at Ex. A (alterations in original).)

Thereafter, on May 10, 2023, at 5:30 p.m., Plaintiff emailed Donna Dean ("Dean"), stating: "Effective today 05/10/2023, I'm revoking the severance agreement. Instead, my plan is to file suit against Richemont, Amanda Rich and Joy West." (Pl.'s Am. Compl. at Ex. A, p. 7; *see* Pl.'s Am. Compl. at 19.) On May 10, 2024, at 6:55 p.m., Plaintiff sent another email to Dean, stating: "Please withdraw the revoke. My lawyer reread the agreement again and we can go ahead and settle with Richemont." (Pl.'s Am. Compl. at Ex. A, p. 8; *see* Pl.'s Am. Compl. at 19-20.) Thereafter, on May 10, 2023, at 8:45 p.m., Plaintiff alleges that he notified Dean via email that he

5

was again revoking the General Release.⁶ (Pl.'s Am. Compl. at 20; *see* Pl.'s Am. Compl. at Ex. A, p. 9.) Defendants claim that Dean never received this email.⁷ (Defs.' Mot. at 4, 6-7; *see* Defs.' Mot., Villaquiran Decl. at 2-3; Defs.' Mot., Dean Decl. at 2.)

Instead, Defendants argue that, on May 11, 2023, at "18:06 CEST," Dean emailed Plaintiff confirming that Plaintiff had nullified his prior revocation of the General Release. (Defs.' Mot., Dean Decl. at 1-2 & Ex. B; *see* Defs.' Mot. at 3.) Dean's email further stated, "We consider the separation agreement to be fully effective as of today, and we have issued the payments accordingly." (Defs.' Mot., Dean Decl. at Ex. B; *see* Defs.' Mot. at 3-4; Defs.' Mot., Dean Decl. at 2.) Plaintiff claims that he never received this email. (*See* Pl.'s Am. Compl. at 20-21; Pl.'s Resp. at 2-4.) Defendant then paid the consideration set forth in the General Release. (Defs.' Mot. at 4; *see* Defs.' Mot., Dean Decl. at 2.) Plaintiff does not deny that he received the consideration but argues that the timing of the payment of the consideration occurred before the General Release's effective date and that he, on multiple occasions, tried to return the consideration. (Pl.'s Resp. at 5-7.)

---

⁶ In this email, Plaintiff allegedly stated:

> Correction, my lawyer approved my revision, not Richemont.
>
> Furthermore, under Texas law, once an offeree revokes the agreement, they cannot accept the offer against [sic]. Therefore, we cannot withdraw the revocation.
>
> Additionally, you have yet to delete my access to the Accertify and PayPal accounts.
>
> As a result, I revoked the agreement.

(Pl.'s Am. Compl. at Ex. A, p. 9.)

⁷ According to Defendants, Dean never received the "alleged second revocation of the . . . General Release" and "RNA conducted a search of its e-mail system for evidence of the purported second revocation but could not find any evidence that the alleged second revocation was ever received into RNA's e-mail system." (Defs.' Mot. at 6-7; *see* Defs.' Mot., Dean Decl. at 2 ; Defs.' Mot., Villaquiran Decl. at 2-3.)

Thereafter, on November 13, 2024, Plaintiff filed this lawsuit against Defendants [doc. 1]. In his Amended Complaint filed on March 7, 2025 [doc. 26], Plaintiff sets forth various multiple claims against Rich pursuant to the Family and Medical Leave Act ("FMLA") and a claim under the "Federal False Statements Act," 18 U.S.C. § 1001. (Pl.'s Am. Compl. at 8-15). Plaintiff also sets forth multiple claims against RNA relating to invalidating the General Release and the arbitration clause in the Dispute Resolution Agreement. (*Id*. at 27-31.)

## II.   LEGAL ANALYSIS

### A.   <u>Defendants' Motion to Dismiss Based on the General Release</u>

In their Motion to Dismiss, Defendants moves to, *inter alia*, dismiss this case based on the General Release. (Defs.' Mot. at 1.) Defendants argues that the General Release is valid, enforceable, and encompasses all of Plaintiff's claims against them; thus, the case against them should be dismissed. (Defs.' Mot. at 5-8.) The problem with Defendants' arguments, however, is that there are allegations from both sides regarding whether the General Release is binding on the parties, including whether Plaintiff validly revoked the General Release a second time and/or whether such revocation is valid in light of Plaintiff being paid consideration for signing the General Release. The Court, in considering a motion to dismiss, cannot make disputed fact determinations and "must indulge all inferences in favor of the party asserting a cause of action." *Gray v. MYRM Holdings L.L.C.*, No. A-11-CA-180-LY, 2012 WL 13028851, at *6 (W.D. Tex. Jan. 10, 2012) (noting that, in deciding a motion to dismiss, the Court does not decide disputed fact issues); *Tex. Taco Cabana, L.P. v. Taco Cabana of N.M., Inc.*, 304 F. Supp. 2d 903, 911 (W.D. Tex. 2003). Consequently, the Court **FINDS** and **CONCLUDES** that Defendants' Motion to Dismiss based on the General Release should be **DENIED**. Thus, the issue becomes whether the Court should compel this case to arbitration based on the arbitration clause in the Dispute

Resolution Agreement so that an arbitrator can determine whether the General Release is valid and enforceable and all other issues raised in this case.

B.     **Defendant's Motion to Compel Arbitration**

In their alternative Motion to Compel Arbitration, Defendants argue that, if the Court does not grant their Motion to Dismiss, the Court should, pursuant to the arbitration agreement in the Dispute Resolution Agreement, compel Plaintiff to arbitrate any surviving claims and stay the lawsuit pending such arbitration. (Defs.' Mot. at 9-11 .) In his response, Plaintiff argues that the arbitration agreement in the Dispute Resolution Agreement is invalid for the following reasons: (1) the November 24, 2021, email that Defendant RNA's human resources and Plaintiff received from DocuSign showing a time stamp of 9:50 a.m. and indicating that all parties or signers had completed the Dispute Resolution Agreement is ambiguous as it raises "uncertainty as to whether it refers to Eastern, Central, or another time standard" and "[p]recise timing is critical for establishing when contractual obligations are met and for determining compliance with deadlines;"[8] (2) the November 24, 2021, email that Defendant RNA's human resources and Plaintiff received from DocuSign with the subject "Completed: Please DocuSign: Richemont Dispute Resolution Program CE—John Russell" creates uncertainty about whether the document was fully executed or if further signature was required; (3) Defendants breached language in the "Resolving Conflicts and Disputes at Richemont"[9] document that prefaced the Dispute Resolution Agreement (that contains the arbitration agreement); (4) the Dispute Resolution Agreement

---

[8] *See* Defs.' Mot., Villaquiran Decl. at Ex. A, pp. 1, 13.

[9] The "Resolving Conflicts and Disputes at Richemont" document stated that "almost all employee concerns are resolved through our internal processes." (Pl.'s Resp. at 14; *see* Defs.' Mot., Villaquiran Decl. at Ex. A, p. 4.) Plaintiff claims that, relying on this assurance, he "submitted a formal discrimination and retaliation complaint expecting prompt investigation and an interview." (Pl.'s Resp. at 14.) Plaintiff argues that, by never interviewing Plaintiff or investigating his internal complaint, Defendants breached this express promise and violated the implied covenant of good faith and fair dealing. (*Id.*)

contains a clause stating that any dispute regarding the validity, scope or enforceability of such agreement or concerning the arbitrability of a particular claim shall be resolved by a Court; (5) the Defendants' DocuSign execution block in the Dispute Resolution Agreement "exhibits critical drafting errors that undermine the contract's formation by obscuring mutual assent" as the "Full Name" field is erroneously filed with the date of November 24, 2021, while the "Date" field shows the signatory's name, John Russell; (6) the Dispute Resolution Agreement states that "All notices and disclosures will be sent to you electronically" and the "system audit trail shows that the [Electronic Record and Signature Disclosure] was "Not Offered via DocuSign;" and (7) Defendants' practices have exhibited a pattern of technical and administrative irregularities that make it plausible that Defendants "had the opportunity to manipulate or manufacture the certificate of completion" on the Dispute Resolution Agreement.  (Pl.'s Resp. at 11-20; *see also* Pl.'s Am. Compl. at 29-30.)

As set forth above in the Dispute Resolution Agreement, the FAA governs the Arbitration Agreement between the parties.  (*See* Defs. Mot., Villaquiran Decl. at Ex. A, p. 10.)  "The FAA reflects the fundamental principle that arbitration is a matter of contract."  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010).  As such, the FAA provides that arbitration provisions in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Under the FAA, a party is permitted "to file a motion to compel arbitration based on 'the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration.'"  *Engebretson v. Randolph-Brooks Fed. Credit Union*, No. 1:23-CV-1002-RP, 2024 WL 2871317, at *1 (W.D. Tex. May 21, 2024) (quoting FAA, 9 U.S.C. § 4).  The FAA has been interpreted to establish a presumption in favor of arbitration.  *See Coleman v. Qwest Commc'ns Corp.*, No. Civ.A. 3:02CV2428-P, 2003 WL

22388482, at *1 (N.D. Tex. Sept. 30, 2003) (noting that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration") (internal quotation marks and citations omitted); *see also Disch v. Grubbs Auto. GRA, LLC*, No. 4:23-cv-01202-P, 2024 WL 2819524, at *1 (N.D. Tex. June 3, 2024) (finding the presumption in favor of arbitration "baked into the very fabric of the Federal Arbitration Act"). This presumption is reflected in the very terms of the FAA, which "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4) (emphasis in original).

The Fifth Circuit has set forth "a two-step analysis for adjudicating a motion to compel arbitration." *Herod v. DMS Sols. Inc.*, No. 4:23-cv-04465, 2024 WL 4881439, at *3 (S.D. Tex. Nov. 25, 2024); *see Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). "The first is contract formation—whether the parties entered into *any arbitration agreement at all.*" *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis in original). "The second involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement." *Id*. While a party seeking to compel arbitration bears the initial burden of demonstrating that a valid arbitration agreement in fact exists, the burden shifts to the nonmovant in the face of a valid agreement "to establish a defense to enforcement (e.g., unconscionability, duress, fraudulent inducement, revocation)." *Rodgers-Glass v. Conroe Hosp. Corp.*, No. H-14-3300, 2015 WL 4190598, at *8 (S.D. Tex. July 10, 2015); *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (noting that "a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity"). "If the nonmovant fails to

meet this burden, the trial court must compel arbitration." *Rodgers-Glass*, 2015 WL 4190598, at *8.

As set forth above, the first step in evaluating Defendants' Motion to Compel Arbitration is for the Court to determine whether the parties entered into an arbitration agreement at all. In determining the enforceability of an arbitration agreement, courts apply the contract law of the state which governs the agreement. *Alim v. KBR, Inc.*, 570 F. App'x 417, 420 (5th Cir. 2014). "In Texas, a contract requires, '(1) offer; (2) acceptance in strict compliance with the offer's terms; (3) a meeting of the minds; (4) consent by both parties; (5) execution and delivery; and (6) consideration.'" *Emily's Place, Inc. v. Regions Bank*, 764 F. Supp. 3d 485, 491 (N.D. Tex. 2025) (quoting *Nazareth Hall Nursing Ctr. v. Melendez*, 372 S.W.3d 301, 305 (Tex. App.—El Paso 2012, no pet.)). Mutual agreement to arbitrate claims is sufficient consideration to support an arbitration agreement. *See Nelson v. Watch House Int'l, L.L.C.*, 815 F.3d 190, 193 (5th Cir. 2016).

Based on the foregoing, the Court **FINDS** and **CONCLUDES** that the evidence submitted by Defendants shows that a valid contract was executed by the parties as Plaintiff signed, via DocuSign, the Dispute Resolution Agreement that contained the arbitration agreement on November 24, 2021. (*See* Defs.' Mot., Villaquiran Decl. at 2; Defs.' Mot., Villaquiran Decl. at Ex. A, 9-11.) The DocuSign Certificate of Completion supports such a finding as it shows that Plaintiff was sent the Dispute Resolution Agreement for signature on November 12, 2021, Plaintiff viewed it on the same date, and signed it via DocuSign on November 24, 2021. (*See* Defs.' Mot., Villaquiran Decl. at Ex. A, p. 12, 25.)

Thus, the burden shifts to Plaintiff to establish a defense to enforcement. *See Rodgers-Glass*, 2015 WL 4190598, at *8. Plaintiff sets forth a variety of arguments as to why the Dispute Resolution Agreement is invalid, including that (1) the time stamp on the DocuSign email creates

11

uncertainty as to what exact time the agreement was signed; (2) the subject line of the DocuSign email confirming the document has been signed creates uncertainty whether it was fully executed; (3) the Defendants breached language in a separate document that prefaced Plaintiff's signing of the Dispute Resolution Agreement; (4) drafting errors in the DocuSign execution block obscure mutual assent; (5) inconsistencies in language in the Dispute Resolution Agreement and the system audit trail; and (6) all the foregoing errors indicate Defendants had the opportunity to manipulate Plaintiff's signature on the Dispute Resolution Agreement.[10]  (*See* Pl.'s Resp. at 11-20.)  As noted by Defendants in their reply, Plaintiff's arguments are insufficient to show that Plaintiff did not validly, voluntarily, and with informed consent enter into and execute the Dispute Resolution Agreement.  *See*, *e.g.*, *Lambert v. Leidos, Inc.*, No. 4:24-cv-00911-P, 2025 WL 242247, at *3 (N.D. Tex. Jan. 16, 2025); *Pacheco v. PCM Const. Svcs., LLC*, No. 3:12-CV-4057-L, 2014 WL 145147, at *5 (N.D. Tex. Jan. 15, 2014) ("Plaintiff[] also presented no evidence, in the form of affidavits or otherwise, that they were unaware of the arbitration provision, did not understand it, or inquired regarding its meaning.").

Thus, the final issue is whether the particular claims asserted by Plaintiff in this lawsuit against Defendants are covered by the Dispute Resolution Agreement.  *See Kubala*, 830 F.3d at 201.  As set forth above, Plaintiff, in his Amended Complaint, has alleged claims against Defendants for actions related to his employment with RNA.  The Dispute Resolution Agreement specifically states that the parties "agree to utilize binding individual arbitration to resolve all disputes that might arise out of or be related in any way to my employment by RNA."[11]  (Defs.'

---

[10] Plaintiff also argues that, based on language in the Dispute Resolution Agreement, the Court should determine whether a claim falls within the arbitration agreement.  (Pl.'s Resp. at 14.)  This is what the Court is doing in this order.

[11] The Court notes that Plaintiff, in his Amended Complaint, states, "Additionally, the arbitration clause excludes claims seeking an injunction, which the Plaintiff's Motion to Amend addresses, making them exempt from arbitration."  (Pl.'s Am. Compl. at 29.)  While the arbitration clause in the Dispute Resolution Agreement does list

Mot., Villaquiran Decl. at Ex. A, p. 9.) Consequently, the Court **FINDS and CONCLUDES** that Plaintiff's claims in this lawsuit fall within the Dispute Resolution Agreement and Defendants' Motion to Compel Arbitration should be **GRANTED**.

### C. Stay or Dismiss Case

Defendants, in their Motion to Compel Arbitration, ask this Court to stay this action pending arbitration. (Defs.' Mot. at 9-11.) In applying the FAA, where "a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does *not* have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." *Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024) (emphasis added). Consequently, as the Court has determined that the action shall be compelled to arbitration, the Court **FINDS and CONCLUDES** that the case should be **STAYED** while the arbitration proceedings are pending.

### RECOMMENDATION

Based on the foregoing, the Court **RECOMMENDS** that Defendants' Motion to Dismiss be **DENIED,** Defendants' Alternative Motion to Compel Arbitration [doc. 31] be **GRANTED,** and the case be **STAYED** pending the arbitration.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de

---

"claims seeking an injunction" as an exception from binding arbitration, Plaintiff has not requested injunctive relief in his Amended Complaint.

novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **June 16, 2025** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED June 2, 2025.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE